### In re MICROAGE CORPORATION, a Delaware corporation, et al., Debtors.

### Nos. BR–00–03833, BR–00–03840 through 00–03850–ECF–CGC.

United States Bankruptcy Court, D. Arizona.

Jan. 22, 2004.

Christopher J. Pattock, Phoenix, AZ, Office of U.S. Trustee.

Charles A. Pulaski, Jr., Donald L. Gaffney, Joe T. Stroud, III, Snell & Wilmer, Phoenix, AZ, for Debtor.

Susan Freeman, Lewis and Roca, Phoenix, AZ, for Creditors Committee.

Denise Ann Faulk, Sara Branscum, Arizona, Attorney General's Office, Phoenix, AZ, for State of Arizona ex rel. Arizona Department of Revenue.

## UNDER ADVISEMENT MEMORANDUM DECISION RE: DEBTOR'S MOTION FOR SUMMARY JUDGMENT AND ARIZONA DEPARTMENT OF REVENUE'S CROSS MOTION FOR SUMMARY JUDGMENT RE: ENTERPRISE ZONE TAX CREDIT

CHARLES G. CASE II, Bankruptcy Judge.

■ Under advisement are the competing motions for summary judgment filed by Debtor and the Arizona Department of Revenue ("ADOR") with respect to Debtor's entitlement to Enterprise Zone Tax Credits or, more particularly, the amount of credit to which Debtor is entitled. The issue is fairly narrow in scope and purely a question of statutory interpretation: Is Debtor entitled to an Enterprise Zone Tax Credit for second and third year employees where no such credit was sought for these employees in their first year of employment?

The parties do not dispute that the first year for which Debtor sought any Enterprise Zone Tax Credit was for taxable year 1996. For that year, Debtor claims that it is entitled to a $ 1,211,981 credit pursuant to Arizona Revised Statute ("A.R.S.") section 43–1161 (1996), of which it attributes $188,500 to 377 Qualified Employment Positions ("QEPs") filled by first year employees, $ 334,981 to 335 QEPs filled by second year employees, and $ 688,500 to 459 QEPs filled by third year employees. The ADOR acquiesces solely to the $ 188,500 in credits attributable to the 335 QEPs filled by first year employees, thereby denying Debtor any credits for the QEPs held by second and third year employees. According to the ADOR, because Debtor

never claimed any tax credit prior to 1996, it could not receive a credit for second and third year employees for whom it had never certified that thirty-five per cent were residents of the zone on the date of their employment as required by section 41–1525(A)(1).[1] Before any credit could be claimed, an employer had to make such a certification as to the employee's status at the time of their employment. Debtor, in light of the evolution of the Enterprise Zone Tax Credit statutes, concludes otherwise.

The pertinent statutes in effect for purposes of this matter read as follows:

41–1525. Tax Incentives

A. The owner of a business located in an enterprise zone . . . is eligible for an income tax credit under section 43–1074 or 43–1161 for net increases in qualified employment positions, . . . if the owner:

1. Certifies to the department of revenue the amount of compensation paid to qualified employees in the enterprise zone, the dates of employment and other information as requested.

2. Certifies to the department of commerce that at least thirty-five per cent of the new qualified employees are residents of the zone on the date of employment.

43–1161. Credit for increased employment in enterprise zones

A. A credit is allowed against the taxes imposed by this title for net increases in qualified employment positions of residents of this state by a business located in an enterprise zone established under title 41, chapter 10, article 2. . . . The amount of the credit is equal to:

1. One-fourth of the taxable wages paid to an employee in a qualified employment position, not to exceed five hundred dollars, in the first year or partial year of employment.

2. One-third of the taxable wages paid to an employee in a qualified employment position, not to exceed one thousand dollars per qualified employment position, in the second year of continuous employment.

3. One-half of the taxable wages, paid to an employee in a qualified employment position, not to exceed one thousand five hundred dollars per qualified employment position, in the third year of continuous employment.

B. To quality [sic] for a credit under this section:

1. All of the employees with respect to whom a credit is claimed must reside in this state.

2. Thirty-five per cent of the employees with respect to whom a credit is claimed for the first year of employment must reside in an enterprise zone that is located in the same county in which the business is located on the date of hire.

Debtor argues that these 1996 amendments, in light of the prior version of the

---

**1.** Debtor initially stated that the ADOR denied it a refund for second and third year employees because Debtor failed to meet the Public Assistance Requirement of the statute for those employees. In response, the ADOR clarified that it did not deny Debtor a refund claim for those employees for that reason, but for the simple fact that Debtor never sought a refund for these second and third year employees before 1996 or in their first and second years of employment respectively. The ADOR admits that there is no longer a Public Assistance Requirement in the statutes. Debtor seems to accept the ADOR's clarification and that the real issue is whether a credit can be claimed for second and third year employees where the employer never certified that these employees met the thirty-five per cent residency requirement.

Act, effectively created two ways in which employers could now claim a tax credit. First, an employer could now claim a credit for net increases in qualified employment *positions,* as opposed to net increases in number of employees, filled by employees in their first, second, and third years of employment (the "New Credit") or, second, an employer could claim a credit for qualified employees who had been hired during 1994 or 1995, and for whom an employer had initially claimed a credit under the pre–1996 Credit statute (the "Old Credit")." Debtor argues it is not seeking a credit for these second and third year employees under the Old Credit, but is instead seeking the credit under the New Credit, which it believes only requires a net increase in Qualified Employment Positions. According to Debtor, the 1996 legislation changed the focus from "qualified employees" to "qualified employment positions."

■ This reading, however, ignores the fundamental purpose of the credit and the clear certification requirements that have been in place statutorily since 1987. The Enterprise Zone Tax Credit was established to encourage businesses to locate in economically depressed areas, thereby providing employment opportunities in those areas. As originally drafted, the Act entitled a qualifying employer to receive an income tax credit for net increases in employment *if, inter alia,* the employer could certify to the ADOR "that at least thirty-five percent of its employees hired for full-time permanent employment ... are residents of the enterprise zone and are or were receiving some form of public assistance." A.R.S. section 41–1527 (1987). If so, the employer was entitled to a $ 5,000 tax credit "per net new employee during the taxable year over the number of employees during the immediately preceding

taxable year." A.R.S. sections 43–1077(A) and 1165(A) (1987).

In 1989, the statutes were amended and renumbered. As part of the amendment, the legislature stopped issuing the Enterprise Zone Tax Credit in one $5,000 lump sum. Instead, the credit was to be paid out over a three year period in an effort to encourage employers to retain qualified employees beyond their first year of employment. A.R.S. sections 43–1074(A) and 43–1161(A) (1989). The statute expressly stated, however, that the payments in years two and three were tied to employees who were *previously qualified* for such credit:

2. One-third of the taxable wages paid to each previously qualified employee ... in the second year of continuous employment.

3. One-half of the taxable wages paid to each previously qualified employee ... in the third year of continuous employment.

A.R.S. section 43–1161(A) (1989). A qualified employee, in turn, was one who qualified as economically disadvantaged for purposes of the Job Training Partnership Act. A.R.S. sections 43–1074(E) and 1161(E) (1989). The 1989 revisions maintained, however, the requirement that the employer certify that "at least thirty-five per cent of the new qualified employees" be residents of the enterprise zone. A.R.S. section 41–1525 (1989).

In 1996 the statutes were amended again, resulting in the version at issue here. While the legislature continued the three-year payout of the credit, it reduced the amount of the credit from $5,000 to $3,000. It also eliminated the requirement that the employees satisfy a public assistance requirement. The legislature also stopped calculating the credit based on the number of "net new employees" and instead calculated the credit based on a "net

increase in Qualified Employment Positions":

>A. A credit is allowed against the taxes imposed by this title for net increases in qualified employment positions of residents of this state by a business located in an enterprise zone. . . .

A.R.S. section 43–1161(A) (1996). However, the 1996 revisions maintained the requirement that "at least thirty-five per cent of the new qualified employees are residents of the zone on the date of employment." A.R.S. section 41–1525(A) (1996). This thirty-five percent residency requirement is repeated in section 43–1161(B) of the 1996 amendments, as quoted above.[2]

It is apparent from reviewing the various legislative incarnations that the legislature created a threshold residency requirement for employers that must be met before an employer can even be considered eligible for an income tax credit. Once the employer makes such a certification, the analysis turns to calculating the number of credits to which the employer is entitled and the amount of the credits. Those amounts are then paid out over a three year period. However, the payment of the credit in years two and three is inextricably linked to the award of the first year credit based on satisfaction of the various statutory requirements. Nothing in the statutes' transformation over the years indicates that the decision to pay the credit out over time was meant to change the singular character of the credit. As the ADOR argued at the hearing, an employer is awarded "*a* credit" up to $ 3,000 payable over three years. The amount of the credit paid in years two and three depends on the amount of the employee's taxable wages and the $ 3,000 limit. The statute does not provide three different credits for first, second and third

year employees: It is one credit essentially paid out on an installment plan.

To read the statute as Debtor urges would in effect create a third method by which an employer could claim a tax credit: An employer could claim a tax credit for an employee in a qualified employment position in his or her second or third year of employment without any threshold residency certification by the employer for that employee's first year of employment. That goes against the fundamental reason for the statute's residency certification requirement—to encourage the hiring of individuals from within the enterprise zone. Debtor's reading also ignores the fact that payment of the credit in years two and three only results because the employer was entitled to the credit in year one.

Debtor's linkage argument also fails because the 1996 amendments in fact already provide a transition from the 1989 statute to 1996 statute such that those employers who qualified for a credit under the 1989 system will continue receiving payment of the credit until paid in full. For new employees hired after December 31, 1995, the 1996 amendments take hold. The 1996 amendments expressly grandfather in "qualified employees" under the prior version of the act:

>Notwithstanding sections 43–1074 and 43–1161, Arizona Revised Statutes, as amended by this act, employees determined to be qualified employees as determined prior to the effective date of this act shall continue to be qualified employees for the purposes of calculation of subsequent years credit.

1996 Ariz. Sess. Laws, ch. 344, section 14. There is no need for the third category Debtor urges. Such an application would result in a windfall to employers who now,

---

**2.** This requirement still exists today even with the recent 2002 amendments.

in the first year under the 1996 amendment, would be able to start claiming positions/employees who were not previously allowed to be claimed, for whatever reason, and as to which there was no previous thirty-five percent certification. This makes little sense in light of the purpose of the credit and the statute's history.

For the foregoing reasons, the Court denies Debtor's motion for summary judgment and grants the ADOR's cross-motion for summary judgment. The ADOR is to submit a form of order consistent with the Court's decision for signature.

So ordered.